# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BIG CAT RESCUE CORP., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> G.W. EXOTIC ANIMAL MEMORIAL ) <br>    FOUNDATION, ) <br> GAROLD WAYNE INTERACTIVE ) <br>    ZOOLOGICAL FOUNDATION, ) <br> GREATER WYNNEWOOD ) <br>    DEVELOPMENT GROUP, LLC, and ) <br> BIG CAT INSTITUTE, ) <br> ) <br> Defendants. ) <br> ) <br> GREATER WYNNEWOOD EXOTIC ) <br>    ANIMAL PARK, LLC, ) <br> ) <br> Intervenor/Counterclaim Defendant, ) <br> ) <br> v. ) <br> ) <br> BIG CAT RESCUE CORP., ) <br> ) <br> Intervenor-claim Defendant/Counterclaimant.) | Case No. CIV-14-377-SLP |

## **O R D E R**

Before the Court is Plaintiff Big Cat Rescue Corp.'s Motion for Contempt Damages [Doc. No. 348] (the "Motion"). It is at issue. *See* Def. The Garold Wayne Interactive Zoological Foundation's Resp. Pl.'s Mot. Contempt Damages [Doc. No. 366]; Joseph Maldonado's Resp. Pl.'s Mot. Contempt Damages [Doc. No. 369]; Pl.'s Reply Contemnor

Joseph Maldonado's Resp. [Doc. No. 377]; Pl.'s Reply Contemnor Def.'s Garold Wayne Interactive Zoological Foundation's Resp. [Doc. No. 378].[1]

## I.     Background

The current Motion represents one dispute in the extensive litigation in this Court involving the exotic animal park in Wynnewood, Oklahoma formerly run by Joseph Maldonado-Passage and the effort of Plaintiff Big Cat Rescue Corp. to collect on certain judgments. The Court will describe only the pertinent aspects of this case's procedural history. Plaintiff requested that the Court find Defendant The Garold Wayne Interactive Zoological Foundation ("Garold Wayne Zoo") and members of its board of directors—John Finlay, Gary Douglas, and Joseph Maldonado-Passage—in civil contempt for violating the Agreed Judgment and Permanent Injunction [Doc. No. 182] by transferring Garold Wayne Zoo's business operations and good will to Greater Wynnewood Exotic Animal Park, LLC ("GWEAP"). *See* Appl. Pl. J. Creditor Big Cat Rescue Order Show Cause [Doc. No. 200]. The Court found that Garold Wayne Zoo and the members of its board of directors violated the Agreed Judgment and Permanent Injunction by allowing "The GW Zoo" trade name to be used by GWEAP. *See* Order [Doc. No. 276], at 3-4.[2] Thus, the Court held Garold Wayne Zoo and its directors in civil contempt. *Id*.

---

[1] Gary Douglas filed a response [Doc. No. 371], to which Plaintiff replied [Doc. No. 379]. But because Plaintiff has withdrawn its request with respect to Douglas, the Court need not consider this briefing. *See* Joint Status Report [Doc. No. 413], at 2.

[2] However, the Court found that certain other assets were not owned by Garold Wayne Zoo (i.e., the website, billboards, PayPal account, email marketing account, animals, and attractions). *Id*. at 4.

The Court also set a briefing schedule to determine the appropriate damages. The current Motion and related briefs address this issue. The Motion requests $100,000 in compensatory damages, $23,304.86 in attorney's fees, and $6,148.99 in costs. Plaintiff has also informed the Court that it withdraws its request with respect to contemnors Douglas and Finlay, so Plaintiff now seeks recovery only from Garold Wayne Zoo and Maldonado-Passage. *See* Joint Status Report [Doc. No. 413], at 2. On August 5, 2021, this Court held an omnibus hearing on various outstanding motions in this case, including the Motion. *See* Minute Sheet of Proceedings [Doc. No. 427]. The Court heard arguments on the Motion and indicated that a written order would follow. *Id.*[3]

## II. Discussion

### A. Compensatory Sanction

The court may impose civil contempt sanctions "only to compel or coerce obedience to a court order or to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance." *Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1238 (10th Cir. 2018) (cleaned up). Because Plaintiff requests a compensatory sanction only, it is unnecessary to address any coercive sanctions. A compensatory sanction "must be based upon the actual losses sustained as a result of the contumacy[,]" so "a direct causal relationship must exist between the amount of damages and the violation of an injunction." *Id.* at 1240 (cleaned up); *see also Allied Materials Corp. v. Superior Prod. Co.*, 620 F.2d

---

[3] Additionally, the Court ordered the parties to confer regarding a compensatory sanction on the Motion. *Id.* Notices filed with the Court indicate that while Plaintiff and Garold Wayne Zoo reached an agreement on this issue, Mr. Maldonado-Passage did not. *See* Suppl. Report [Doc. No. 430].

224, 227 (10th Cir. 1980). Plaintiff must establish contempt damages by a preponderance of the evidence. *Reliance Ins. Co. v. Mast Const. Co.*, 159 F.3d 1311, 1318 (10th Cir. 1998).

Plaintiff requests a compensatory sanction of $100,000, asserting that courts evaluating the contemptuous use of intellectual property look to the benefits accruing to the user as a proper measure of compensatory damages. Mot. 7.[4] According to Plaintiff and its expert, Rick Hoffman, the value GWEAP received from using the trade name during the 12-month relevant period is $100,000.[5] Plaintiff argues that it could have applied any proceeds from a sale of the trade name to Plaintiff's judgments and the value of the trade name "is calculable by examining the income and other benefits [GWEAP] derived from its use during that period." *Id*. at 11. Mr. Hoffman's affidavit describes three approaches for valuing assets: the Income Approach, the Market Approach, and the Cost Approach. He opines that the most reasonable method is the Cost Approach, which looks to the cost to recreate an asset. According to Mr. Hoffman, a reasonable estimate of the cost to rebrand the zoo is $50,000. Mr. Hoffman then notes, "it would take approximately 6-months for a rebrand, during which time [GWEAP] would continue saving lease payments but would lose much of its recurring donations until rebranding was complete." Hoffman Aff. 10. Thus, Mr. Hoffman adds amounts representing half of both the annual saved lease costs and GWEAP's first year donations to arrive at a grand total of $100,000.

---

[4] Citations to the parties' submissions reference the Court's ECF pagination.

[5] The relevant period relied upon by Plaintiff includes approximately February 2016 to January 2017.

After considering the underlying briefing and the arguments made at the August 5, 2021 hearing, the Court finds that Plaintiff has not carried its burden to show compensatory sanction of $100,000 is warranted.  The methodology Plaintiff's expert used to arrive at the $100,000 figure is based on the costs that GWEAP ostensibly saved by not having to rebrand the zoo.  The Court fails to see how this cost-savings approach is tethered to the actual loss sustained by Plaintiff as a result of Garold Wayne Zoo allowing GWEAP to use the trade name.  Further, Mr. Hoffman's estimation of the cost to rebrand appears to be based on nothing more than a blog post from a branding agency.  Thus, the requested $100,000 sanction is too speculative.  "In the absence of evidence showing the amount of the loss, any sum awarded by the court is speculative and therefore arbitrary. . . . The court must have some basis for determining not only the amount, but the reasonableness of costs claimed."  *Allied Materials Corp.*, 620 F.2d at 227.[6]

Moreover, Plaintiff provides no support for its expert's cost-savings approach.  Instead, Plaintiff cites authority holding that disgorgement of profits made by the contemnor is an appropriate civil contempt remedy.  *See, e.g.*, *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 457 (1932) ("it has been repeatedly assumed that, in a proceeding for civil contempt for disobedience to an injunction granted in an infringement suit, the profits derived from the violation of the injunction are recoverable"); *ePlus Inc. v.*

---

[6] At the August 2021 hearing, Plaintiff suggested that, as a creditor, it missed out on the ability to sell the trade name to GWEAP and that Plaintiff would have thus obtained the money GWEAP saved from not having to rebrand.  Although this argument is more closely tied to Plaintiff's actual loss, the Court still finds this argument and Mr. Hoffman's cost-savings methodology too speculative to justify a compensatory damages award of $100,000.

*Lawson Software, Inc.*, 946 F. Supp. 2d 449, 454 (E.D. Va. 2013) ("Disgorgement of profits remains a viable remedy in civil contempt proceedings"); *Colonial Williamsburg Found. v. Kittinger Co.*, 792 F. Supp. 1397, 1408 (E.D. Va. 1992) ("the disgorging of profits for the sale of the offending pieces is appropriate as both a compensatory and a coercive sanction."). The requested $100,000 sanction does not represent the profit made by Garold Wayne Zoo, Maldonado-Passage, or even GWEAP as a result of the contempt, so these authorities are unhelpful.[7] And Plaintiff points to no authority demonstrating that Mr. Hoffman's cost-saving approach is an appropriate measure of a compensatory civil contempt sanction. *See United States v. Sherard*, No. 05-CV-486-JPS, 2015 WL 1840050, at *6 (E.D. Wis. Apr. 22, 2015) ("To the extent that the government is arguing that cost-savings are sufficient to warrant civil contempt sanctions, the Court declines to make that leap in logic.").[8]

The Court finds *Sherard* persuasive. There, a consent decree required the defendants to abate lead-based paint at residential properties. *Id.* at *1. The defendants instead razed or failed to follow the proper abatement procedures with respect to certain properties. *Id.*

---

[7] Plaintiff's expert noted there was insufficient data to utilize an approach he called the "Income Approach." Additionally, although Plaintiff argued at the hearing that Mr. Hoffman discussed donations made to GWEAP using the trade name, Mr. Hoffman's cost-savings approach considered donations only to the extent that, under his hypothetical six-month rebranding period, GWEAP would lose half of its yearly donations. Mr. Hoffman did not derive the $100,000 simply from the profits made using the trade name and Plaintiff did not seek a compensatory sanction based solely on profits.

[8] In fact, in *ePlus*, the court noted that the contempt movant's expert originally argued that the movant "should either be awarded the profits that [the contemnor] made . . . or the costs that [the contemnor] saved by not complying with the Court's Injunction Order." 946 F. Supp. 2d at 451. However, the parties later agreed that the expert would not testify regarding "cost saving." *Id.* at 457.

at *3-4.  The government asked the court to order sanctions based on the average cost to abate the lead hazards in the properties.  *Id*. at *5.   The court rejected this approach, explaining: "at best, the government has 'guesstimated' what the defendants may have saved by razing the properties and remediating the lead-based paint hazards . . . This does not suffice to meet the government's burden of proof."  *Id*.  Further, *Sherard* also rejected the government's reliance on cases that that involved the dislodging of profits from impermissible sales.  *Id*. at *6.  The Court finds that Plaintiff has not carried its burden to establish compensatory damages based on Mr. Hoffman's cost-savings approach.

### B. Attorney's Fees and Costs

Plaintiff requests $23,304.86 in attorney's fees and $6,148.99 in costs.  Plaintiff explains that because the Court did not find contempt "as to all items, the attorney fees and costs related to the show cause application and evidentiary hearing have been reduced by a factor of 25%."  Hintz Aff. 4.  Plaintiff notes that attorney's fees were billed at an hourly rate of "$250-275 for shareholder/director attorneys" and "$100-110 for paralegal work[,]" but fails to articulate the total number of hours expended or otherwise explain the basis for Plaintiff's total fee figures.  Further, it appears that certain time entries were later divided or reduced, but the basis for these reductions is not explained.

Maldonado-Passage and Garold Wayne Zoo do not dispute the hourly rates of Plaintiff's attorneys, but contend that the time expended was excessive in light of the result obtained (i.e., Plaintiff demonstrated contempt only as to the transfer of the trade name but not as to the transfer of any other asset).  At the August 2021 hearing, counsel for Garold

Wayne Zoo conceded that Plaintiff is entitled to some amount of fees and costs, but argued that any award should be reduced by 75%.

The Court finds that Plaintiff's requested fees and costs are excessive. The court has discretion in awarding attorney's fees and expenses. *See Premium Nutritional Prods., Inc. v. Ducote*, 571 F. Supp. 2d 1216, 1220 (D. Kan. 2008); *see also Allied Materials Corp.*, 620 F.2d at 227. No finding of willfulness is required. *John Zink Co. v. Zink*, 241 F.3d 1256, 1261–62 (10th Cir. 2001). Plaintiff's attorneys generally billed time related to drafting the original contempt motion, preparing for the contempt hearing, a related continuance motion, subpoenas, and preparing proposed findings of fact and conclusions of law. According to the Court's review of the billing statements submitted by Plaintiff, Plaintiff recorded over 170 hours billed by at least three shareholder/director attorneys.[9] The October 3, 2016 contempt hearing lasted over four hours, but the trade name issue made up only a small portion of that hearing and, in fact, counsel for Garold Wayne Zoo stipulated that the two entities had the same trade name and acknowledged that Garold Wayne Zoo released it to GWEAP. Nevertheless, Plaintiff argues that the fees and costs are warranted because the trade name "pervaded" all the assets discussed at the hearing. In Plaintiff's contempt motion, Plaintiff sought relief based on the transfer of "the entirety of Garold Wayne Zoo's business operations, including its good will[.]" Appl. [Doc. No. 200], at 3-4. But the Court found contempt only as to the use of the tradename. The Court found that Garold Wayne Zoo did not own other assets (i.e., "the website, billboards, PayPal

---

[9] However, as previously noted, it appears that some time entries were later divided, which makes discerning the total hours billed by each attorney nearly impossible.

account, which host the list of donors to the Garold Wayne Zoo, the email marketing account, as well as the animals and attractions at the zoo.") and did not address good will. Order [Doc. No. 276], at 3-4.[10]

After reviewing the billing documentation submitted by Plaintiff, as well the underlying contempt-related filings, the Court finds that the total amount billed for attorney's fees and costs ($39,271.80) should be reduced by 75%. This determination takes into account "the reasonableness of the fees in light of the success obtained"—which was limited in this matter. *Ross v. Univ. of Tulsa*, No. 14-CV-484-TCK-PJC, 2017 WL 3951604, at *2 (N.D. Okla. Sept. 8, 2017); *see also Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). An award of the attorney's fees and costs in the amount requested by Plaintiff would result in an award disproportionate to the success obtained. Thus, Plaintiff will be awarded $9,817.95 in its attorney's fees and costs.

## III.  Conclusion

IT IS THEREFORE ORDERED that Plaintiff Big Cat Rescue Corp.'s Motion for Contempt Damages [Doc. No. 348] is GRANTED IN PART and DENIED IN PART as described herein. A compensatory sanction in the amount of $9,817.95 shall be paid by Garold Wayne Zoo and Joseph Maldonado-Passage jointly and severally to Plaintiff within

---

[10] At the August 2021 hearing, Plaintiff argued the Court later found good will had been transferred. *See* Order [Doc. No. 387]. Although in that July 11, 2018 Order, this Court noted that "the prior rulings do not address the business goodwill, going-concern value, and income stream of G.W. Zoo and Garold Wayne Zoo that Big Cat Rescue has shown passed to Greater Wynnewood[,]" *id*. at 6, the Court finds Plaintiff's argument in this regard unpersuasive because that Order explicitly confined its scope to GWEAP's "receiver-related arguments only[.]" *Id*. at 8 n.5.

30 days of the date of this Order.  Plaintiff shall notify the Court immediately if payment is not timely made.  Failure to timely make this payment may subject the contemnors to additional contempt sanctions.

IT IS SO ORDERED this 14th day of December, 2021.

_____
SCOTT L. PALK
UNITED STATES DISTRICT JUDGE